UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PARENTS LEAGUE FOR EFFECTIVE
AUTISM SERVICES, et al.,

      Plaintiffs                            Case No. 2:08-cv-421

      v.                                  Judge Graham

HELEN JONES-KELLEY, et al.,        Magistrate Judge King

      Defendants.

Memorandum Opinion and Order

This matter is before the Court on a joint motion to dismiss, pursuant to Fed. R. Civ. 12(b)(6)[1] filed by Defendants Helen Jones-Kelley, in her official capacity as Director of the Ohio Department of Job and Family Services (ODJFS) and Sandra Stephenson, in her official capacity as Director of the Ohio Department of Mental Health (ODMH) (collectively Defendants). Plaintiffs are Parents League for Effective Autism Services (PLEAS), X.C., a minor and his parent, W.G., a minor and his parent, and K.W., minor and his parent.

Plaintiffs filed a complaint for injunctive and declaratory relief[2], and a motion for temporary restraining order, asking this Court to enjoin the Defendants from enforcing proposed Ohio Administrative Rules governing the provision of services to children under Ohio's Medicaid program, and to require Defendants to continue providing for "medically

---

[1] In their motion, Defendants alternatively seek dismissal pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join the Federal Centers for Medicare and Medicaid (CMS). On June 20, 2008, this Court ordered the joinder of CMS. Thus, Defendants motion to dismiss for failure to join a party is moot.

[2] Plaintiffs filed an amended complaint for injunctive and declaratory relief on June 24, 2008.

1

necessary services," including applied behavior analysis ("ABA").  Plaintiffs further seek declaratory judgment that the Defendants' proposed rules violate the Plaintiffs' rights under federal Medicaid law. On May 19, 2008, Defendants filed their joint motion to dismiss. Plaintiffs filed their response on June 3, 2008.  On June 9, 2008, Defendants filed their reply memorandum in support of the motion to dismiss.  As set forth below, the Court denies the Motion to Dismiss.

**I.    FACTUAL BACKGROUND**

Plaintiff PLEAS is an association of parents and families and children, including the three individual plaintiffs, who have a diagnosis on the autism spectrum. Plaintiffs, including the three individual plaintiff children, are children under the age of twenty-one who are eligible for Medicaid. Plaintiff children represented by PLEAS, as well as the three individual children, X.C., W.G., and K.W.,  receive mental health services, funded by Medicaid, from Step By Step Academy (SBSA). SBSA is a nationally accredited and state certified community mental health agency that provides mental health services to children with autism.  Autism is a "complex neurodevelopmental disability that generally appears during the first three years of life which impacts the normal development of the brain, resulting in impairments of social interaction, verbal and non-verbal communication, leisure and play activities, and learning." (Complaint at ¶ 53). If untreated, autism often results in lifelong mental retardation. (Id).

SBSA provides a variety of services to its students. These services include full-day center based applied behavior analysis (ABA), psychological assessments and diagnosis, parent advocacy and resource information and home outreach services, including one-to-one services. (Id at ¶ 56). The services received by Plaintiff children

are recommended by their physicians and/or other licensed practitioners.  The three individual plaintiffs have benefitted from the services received at SBSA. Benefits include "increased IQ levels, reduction in developmental disabilities, decrease in behavioral outbursts, increase in on-task behaviors, decrease in self-stimulation behaviors, increased communication skills, increased daily living skills, such as toileting, dressing, food preparation, and a decreased chance of being placed in segregated special education classrooms or institutional settings." (Id at ¶ 57).

Defendant Helen Jones-Kelley is the Director of ODJFS, which is the agency responsible for the administration of the Medicaid program in Ohio.  As Director, Jones-Kelley is responsible for ensuring that Ohio's medicaid program complies with federal Medicaid statutes and regulations. Jones-Kelley is also responsible for ensuring that other state and county agencies and subdivisions which provide services funded by Medicaid comply with applicable federal laws. Defendant Sandra Stephenson is the Director of ODMH.  As Director, Stephenson is responsible for adopting standards for services provided by community mental health facilities. ODJFS and ODMH are parties to an interagency agreement to provide behavioral health services to people who are eligible for Ohio Medicaid benefits.

Defendants, in their official capacities, have promulgated new rules governing medical services to disabled children under Medicaid.  These rules are scheduled to go into effect on July 1, 2008.  According to Plaintiffs, the new rules violate federal Medicaid laws and will result in a severe reduction of medically necessary services to Plaintiff children. Plaintiffs assert that without these services, the children currently served by SBSA face a regression in skills and an increase in inappropriate and/or

dangerous behaviors. Plaintiffs PLEAS asserts that its members will be unable to afford the necessary services without Medicaid funding and that there are no comparable alternative providers or options available to them. Plaintiffs bring their claims pursuant to 42 U.S.C. §1983. The Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. § §1343(3) and (4) (jurisdiction over actions involving civil rights) and 28 U.S.C. § §2201 and 2202 (district court has the authority to grant declaratory judgment).

Medicaid, authorized by Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, is a joint federal and state program designed to provide "medical assistance" to needy individuals. Its administration is entrusted to the Secretary of Health and Human Services (HHS), who in turn exercises his authority through the Centers for Medicare and Medicaid Services (CMS). Ark. HHS v. Ahlborn, 547 U.S. 268, 275 (2006). The Medicaid program is subsidized by the federal government, but is administered by the states. Catanzano by Catanzano v. Wing, 103 F.3d 223, 225 (2nd Cir. 1996). While participation in the program is voluntary, once a state chooses to participate, it must comply with the requirements of the Medicaid Act and its regulations. Harris v. McRae, 448 U.S. 297, 300 (1980)(although participation is optional, once a state elects to participate, it must comply with the requirements of Title XIX); State of Louisiana v. HHS, 905 F.2d 877, 878 (5th Cir. 1990)(although states have considerable discretion to design and operate their individual programs, they must maintain their plans in compliance with federal requirements in order to ensure federal funding).

Participating states must submit a "state plan" to CMS for approval before that state may receive Medicaid funds. See 42 U.S.C. §§ 1396a(a) & (b); see also,

Catanzano, 103 F.3d at 225. The state plan initially must be approved by the Secretary of Health and Human Services. 42 U.S.C. § 1316(a)(1). Thereafter, a state that seeks to change its state plan may submit an amendment to CMS for approval. See 42 C.F.R. § 430.14-430.15; La. Dep't of Health & Hosps. v. Ctr. for Medicare & Medicaid Servs., 346 F.3d 571, 572 (5th Cir. 2003) (stating that 42 C.F.R. § 430.14-430.15 records the Secretary's delegation of authority for approving state plan amendments to CMS). Ohio has an approved state plan. Ohio Dep't of Mental Retardation & Developmental Disabilities v. U.S. Dep't. of Health and Human Services, Health Care Financing Admin.,761 F.2d, 1187,1188 (6th Cir. 1985).  Ohio's statutory scheme for the provision of Medicaid is found at Ohio Rev. Code. § 5111.01 *et seq.* and its regulations found at Ohio Admin. Code Chapter 5101.

Compliance with federal Medicaid law requires a participating state to provide medical assistance to certain classes of people, including disabled children. 42 U.S.C. §1396a(a)(10)(A).  A state plan must provide a range of mandatory medical services to Medicaid recipients. 42 U.S.C. §1396d(a)(1)-(28) (setting forth the various required services); see also S. D. v. Hood, No. 02-2164 Section "N", 2002 U.S. Dist. LEXIS 23535 (E.D. La., Dec. 5, 2002)(federal law mandates that the states provide a range of medical services).  One of the mandatory medical services required by the Medicaid Act is early and periodic screening, diagnosis and treatment services (EPSDT) for eligible individuals under the age of twenty-one. 42 U.S.C. §§ 1396a (a)(43).  EPSDT is defined at 42 U.S.C. §1396d(r) and includes the following specific services: screening services to determine the existence of certain physical or mental illnesses or conditions (§1396d(r)(1)(A)(ii)), vision services (§1396d(r)(2)), dental services (§1396d(r) (3)), and

5

hearing services (§1396d(r) (4)).  EPSDT also includes:

> such other necessary healthcare, diagnostic services, treatment, and other measures described in section 1905(a) to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan.

42 U.S.C. §1396d(r) (5).  State plan requirements for EPSDT are further set out in 42 C.F.R. § 441.50.

Ohio's EPSDT plan is referred to as "Healthchek" and is codified at Ohio Admin. Code 5101:3-14-01 -- 5101:3-14-22. The purpose of Healthchek is to "maintain health by providing early intervention to discover and treat health problems." Ohio Admin. Code 5101:3-14-01(A).  Plaintiff children are eligible for EPSDT services.  In Ohio, ESPDT services are covered by medicaid "when the services are medically necessary, as defined in rule 5101:3-1-01 of the Administrative Code, to treat or ameliorate a defect, physical or mental illness, or condition." Ohio Admin. Code 5101:3-14-05(E). The term "medically necessary" is defined as "services that are necessary for the diagnosis or treatment of disease, illness, or injury and without which the patient can be expected to suffer prolonged, increased or new morbidity, impairment of function, dysfunction of a body organ or part, or significant pain and discomfort." Ohio Admin. Code 5101:3-1-01 (A). In addition, a medically necessary service must: 1) meet generally accepted standards of medical practice (5101:3-1-01(A)(1)); 2) be appropriate to the illness or injury for which it is performed as to type of service and expected outcome (5101:3-1-01(A)(2)); 3) be appropriate to the intensity of service and level of setting (5101:3-1-01(A)(3)); 4) provide unique, essential, and appropriate information when used for diagnostic purposes (5101:3-1-01(A)(4)); 5) be the lowest cost alternative

6

that effectively addresses and treats the medical problem(5101:3-1-01(A)(5)); and 6) meet general principles regarding reimbursement for medicaid covered services found in rule 5101:3-1-02 of the Administrative Code (5101:3-1-01(A)(6)).  Ohio's state plan specifically identifies certain services which are covered, however, the fact that a state plan does not mention a particular service does not mean it is not a covered EPSDT service. See 42 U.S.C. § 1396d(r)(5) (setting forth EPSDT requirements and specifically stating that services are required, "whether or not such services are covered under the State plan"); see also, Pediatric Speciality Care, Inc. v. Ark. Dep't of Human Servs., 293 F.3d 472, 480 (8th Cir. 2002) (the state plan need not specifically list every treatment service conceivably available under the EPSDT mandate).

     At issue in this case are proposed changes to Ohio's Medicaid plan which become effective on July 1, 2008.  Currently, Ohio's state plan covers certain community mental health services, so long as those services are "rendered by eligible medicaid providers." Ohio Admin. Code 5101:3-27-02(A). Under this section, mental health services includes community psychiatric supportive treatment (CPST). See Ohio Admin. Code 5101:3-27-02(A)(6).  The individual Plaintiff children currently receive community mental health services from SBSA which are covered by Medicaid. The new version 5101:3-27-02,  effective July 1, 2008, is amended to clarify that only "rehabilitative" mental health services will be reimbursed by Medicaid. Ohio Admin. Code 5101:3-27-02(A), eff. 7/1/08.  "Rehabilitative services" are defined in the amended version as providing for the "maximum reduction of mental illness and are intended to restore an individual to the best possible functional level." Id.  CSPT services will continue to be covered by medicaid subject to certain limitations. Ohio Admin Code

5101:3-27-02(A)(6), eff. 7/1/08.  According to Plaintiffs, these changes narrow the definition and eligibility for CPST services by creating a definition of "rehabilitative" that is more restrictive than the federal regulations.  The federal regulations define "rehabilitative services" as "any medical or remedial services recommended by a physician or other licensed practitioner of the healing arts, within the scope of his practice under State law, for maximum reduction of physical or mental disability and restoration of a recipient to his best possible functional level."  See 42 C.F.R. § 440.130(d). The federal regulations do not require that the rehabilitative service reduce "mental illness."

The second proposed change is to Ohio Admin. Code 5122-29-17, which governs CSPT services.  The current version, in effect until July 1, 2008, provides that CSPT services are  "an array of services delivered by community based, mobile individuals or multidisciplinary teams of professionals and trained others [that] address the individualized mental health needs of the client." Ohio Admin. Code 5122-29-17(A). Under the version currently in effect, CPST services "should be focused on the individual's ability to succeed in the community; to identify and access needed services; and to show improvement in school, work and family and integration and contributions within the community." Id.   The amended version of Ohio Admin Code 5122-29-17, eff. 7/1/08, specifies that CSPT service is a "rehabilitative service intended to maximize the reduction of symptoms of mental illness in order to restore the individual's functioning to the highest level possible." The new rule restricts coverage of rehabilitative services to individuals with "mental illness," thereby effectively excluding other physical and mental disabilities from coverage.

Plaintiffs assert that the proposed changes to the Ohio Administrative Code are in conflict with the mandatory requirements of federal law because Ohio is attempting to unlawfully restrict access to federally guaranteed medically necessary services. Plaintiffs bring their Complaint pursuant to 42 U.S.C. §1983. Plaintiffs ask this Court to enjoin the Defendants from enforcing the proposed rules.  In response, Defendants have filed a joint motion to dismiss, asserting several bases for dismissal. First, Defendants assert that Plaintiff PLEAS has no standing and that counsel for Plaintiffs, Ohio Legal Rights Services (OLRS) cannot represent an association like PLEAS. Defendants further assert that the Plaintiffs complaint must be dismissed because they have not asserted a right enforceable through 42. U.S.C. §1983.

## II.     STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  Erickson v. Pardus, 550 U.S. __, 127 S.Ct. 2197, 2200 (2007) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295 (6th Cir. 2008).  A motion to dismiss under Rule 12(b)(6) will be granted only if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is an insurmountable bar to relief.  Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978).  Under Rule 8(a), "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson, 127 S.Ct. at 2200 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

9

Because a motion under Rule 12(b)(6) is directed solely at the complaint itself, the court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail.  Scheuer, 416 U.S. at 236; Bell Atlantic Corp. v. Twombly, 550 U.S. __, 127 S.Ct. 1955, 1965 (2007) (Rule 8 "does not impose a probability requirement at the pleading stage").

Despite this liberal pleading standard, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986); see also Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ("[W]e need not accept as true legal conclusions or unwarranted factual inferences.").  Though the complaint need not contain detailed factual allegations, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim.  Bell Atlantic, 127 S.Ct. at 1964-65; Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526 (1983).  The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief."  Bell Atlantic, 127 S.Ct. at 1965 n.3.  Labels, conclusions, and formulaic recitations of the elements of a cause of action "will not do."  Id. at 1965.  "Accordingly, a complaint 'must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'"  Ferron v. Zoomego, Inc., No. 07-4007, 2008 WL 1988587, at *2 (6th Cir. May 7, 2008) (Lewis v. ACB Business Serv., Inc., 135 F.3d 389, 406 (6th Cir. 1998)).

### III.	LEGAL ARGUMENT

####	A.	Whether Plaintiff PLEAS has standing.

Plaintiff PLEAS is an association made up of parents and children receiving services at SBSA. An association has standing to sue on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit  N.Y. State Club Ass'n v. City of New York, 487 U.S. 1 (1988). Only the first two prongs of this test are constitutionally mandated while the third requirement is prudential as a matter of "administrative convenience and efficiency." United Food & Commercial Workers Union Local 751 v. Brown Group, 517 U.S. 544, 557 (1996). Associational standing "recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Brock, 477 U.S. 274, 281 (1986).

Under the three part analysis, Plaintiff PLEAS has standing.  The first prong of the test is clearly met.  Plaintiffs' members, children receiving services for their disability at SBSA, have standing to sue in their own right. Standing to sue means that a party has sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy. Dutoit v. Board of Johnson County Comm'rs, 233 Kan. 995, 1003, 667 P.2d 879 (1983). PLEAS members, as children currently receiving services at SBSA who face the potential immediate loss of such services, have a sufficient stake in a justiciable controversy.  John Roe #2 v. Ogden, 253 F.3d 1225, 1230 (10th Cir. 2001)

(finding that an organization had standing because one of its members had standing to sue in his own right).  The second prong of the test is also met.  Liberally construed, the complaint establishes that PLEAS was formed by groups of parents of children with autism who receive services at SBSA for the purpose of working together as advocates for effective autism services.  The relief sought in the complaint is germane to PLEAS' purpose.

The third prong requires a finding that the claim and relief do not require the participation of individual members in the lawsuit. Individual members' participation is not normally necessary when an association seeks prospective or injunctive relief. Sandusky County Democratic Party v. Blackwell, 387 F.3d 565, 574 (6th Cir. 2004). Where the issue involves resolution of a question of law, and leaves resolution of individual eligibility to be determined later, individual participation is not required. See International Union, United Auto., etc. v. Brock, 477 U.S. 274, 287 (1986) (though the unique facts of each member's claim will have to be considered before he can receive benefits allegedly due him, the union could litigate the legal issue without the participation of members); National Air Traffic Controllers Ass'n v. Pena, 944 F. Supp. 1337 (individual participation not required where the injunctive relief sought would inure to the benefit of all members).

In the instant case, Plaintiffs ask for injunctive relief to prevent the amended versions of the Ohio Administrative Code from going into effect on July 1, 2008. Plaintiffs allege that the proposed amendments to the rules are contrary to the State's obligation to provide medically necessary services to children under the federal Medicaid requirements of EPSDT.  The relief sought by Plaintiffs is a declaration that

the proposed Ohio rules violate federal Medicaid law. While the ultimate resolution of which services might be covered for a given child would require individual participation, the legal question of the legality of the amendments does not need such participation. The Court finds that PLEAS has standing to bring this case.

The Court further finds that the Defendants' additional argument that OLRS cannot represent PLEAS is not properly raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Defendants assert that the OLRS is a "protection and advocacy system" established by the Developmental Disabilities Assistance and Bill of Rights Act (DDA) and the Protection and Advocacy for Mental Ill Individuals Act (PAIMI).  Ohio law implementing DDA and PAIMI is found at Ohio Rev. Code 5123.60, *et seq.*  Defendants assert that OLRS is prohibited from representing an organization and therefore cannot represent PLEAS.

The Court has questions about the validity of the Defendants' argument, but in any event, it is not properly raised in a motion to dismiss. A motion to dismiss for failure to state a claim is granted where the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is an insurmountable bar to relief.  Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978).  Whether or not OLRS can represent PLEAS does not establish an absence of law to support the claims in the complaint nor does it present an insurmountable bar to relief. Accordingly, the issue of OLRS' ability to represent PLEAS is not properly made in a Civ. R. P. 12(b)(6) motion to dismiss.

   **B.**  **Whether Plaintiffs Have Alleged a Right Enforceable through 42**

**U.S.C.§ 1983.**

Plaintiffs assert that the Defendants have subjected them to a deprivation of rights, privileges or immunities granted them by federal law.  The deprivation of rights stems from the Defendants' pending Administrative Rules which are an allegedly unlawful restriction on the ESPDT provisions set forth in 42 U.S.C. § 1396a(a)(10)(A), § 1396a(a)(43), § 1396d(a)(4)(B), and § 1396d(r). Plaintiffs assert that the EPSDT provisions of the Medicaid Act give them a federal right which can be enforced through a section 1983 claim.

42 U.S.C. § 1983 imposes liability on anyone "who, acting under color of law, deprives a person of any 'rights, privileges, or immunities secured by the Constitution and laws." Not all violations of federal law give rise to § 1983 actions. Rather, the plaintiff must assert a violation of a federal right, not merely a violation of a federal law." Blessing v. Freestone, 520 U.S. 329, 340 (1997).  In determining whether a particular statutory provision gives rise to an enforceable right under § 1983, the Court must apply a three-part test as set forth in Blessing, 520 U.S. 329, and modified in Gonzaga University v. Doe, 536 U.S. 273, 283 (2002).  First, the Court must determine whether Congress intended that the provision in question benefit the plaintiff. Second, the Court must consider "whether the right supposedly protected by the statute is vague and amorphous so that its enforcement would strain judicial competence." Blessing, 520 U.S. at 340. Finally, the Court must consider whether the provision unambiguously imposes a binding obligation on the States.  Id. However, nothing short of an "unambiguously conferred right" will support a cause of action under § 1983. Gonzaga University, 536 U.S. at 283.

In 42 U.S.C. §§ 1396a(a)(10)(A) and 1396d(a)(4)(B), Congress specifically requires that state Medicaid plans provide EPSDT services. <u>DaJour B. v. City of New York,</u> No. 00 Civ. 2044 (JGK), 2001 U.S. Dist. LEXIS 10251 (S.D. N.Y. April 10, 2001). 42 U.S.C. § 1396a(a)(43) provides, that a state plan for medical assistance must provide for informing all persons in the state under age of twenty-one about the availability of EPSDT services, must provide such screening services in all cases where they are requested, and must arrange for corrective treatment the need for which is disclosed by such child health screening services. 42 U.S.C § 1396a(a)(43)(A), (B) & (C). A state plan for EPSDT must include, at a minimum, the services set forth at 42 U.S.C. § 1396d(r).

The scattered statutory sections relating to EPSDT services, including 42 U.S.C. § 1396a(a)(10) and(43), § 1396d(a)(4)(B) and (r) (hereinafter collectively referred to as the "EPSDT provisions") confer an unambiguous right on Plaintiffs that is enforceable through a § 1983 claim. Under the EPSDT provisions, eligible children are entitled to screening and treatment services. These provisions clearly benefit the Plaintiffs, who are such eligible children. <u>Clark v. Richman,</u> 339 F. Supp. 2d 631, 640 (M.D. Pa. 2004) (42 U.S.C § 1396a(a)(43) affords plaintiffs vindicable private rights enforceable through a section 1983 claim); <u>S.D. v. Hood,</u>, 391 F.3d 581, 603 (5th Cir. 2004)("the EPSDT treatment provisions of the Medicaid Act contains the rights-creating language critical to showing the requisite congressional intent to confer a new right"); <u>Kenny A. v. Perdue</u>, 218 F.R.D. 277, 293-94 (N.D. Ga. 2003) (the EPSDT statutory provisions are clearly intended to benefit children under the age of 21).

Second, the rights guaranteed by the EPSDT provisions of the Federal Medicaid

law are not so "vague and amorphous" as to defeat judicial enforcement. Pediatric Speciality Care, Inc. v. Ark. Dep't of Human Servs., 293 F.3d 472 (8th Cir. 2002); Kenny A., 218 F.R.D. at 293-94 (ESPDT provisions are not too "vague and amorphous" to be enforced by the judiciary). Finally, the third Blessing factor is met because the federal Medicaid Act imposes EPSDT obligations on the participating states. See S.D., 391 F.3d at 603 (the Medicaid statute unambiguously imposes EPSDT obligations on the participating states); see also, Miller by Miller v. Whitburn, 10 F.3d 1315, 1319 (7th Cir. 1993) (holding that third Blessing factor is satisfied by EPSDT provisions because "states participating in the Medicaid program must provide EPSDT services to all individuals under age twenty-one"); Pediatric Speciality Care., 293 F.3d at 478 (EPSDT provisions "clearly impose a binding obligation on the States").

Accordingly, the Plaintiffs have alleged a right enforceable through 42 U.S.C. 1983.  See, Rosie D. v. Romney, 410 F. Supp. 2d 18, 52 (D. Mass. 2006) (section 1983 is a proper way to enforce EPSDT provisions).

**IV.    CONCLUSION**

Based on the foregoing analysis, Defendants' motion to dismiss (doc.13) is denied.

IT IS SO ORDERED,

                                                      S/ James L. Graham
                                                      James L. Graham
                                                      UNITED STATES DISTRICT JUDGE

Date:  June 30, 2008