UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PARENTS LEAGUE FOR EFFECTIVE
AUTISM SERVICES, et al.,

          Plaintiffs                  Case No. 2:08-cv-421

          v.                        Judge Graham

HELEN JONES-KELLEY, et al.,       Magistrate Judge King

          Defendants.

## OPINION AND ORDER

**I.      Introduction**

At issue in this case is the State's obligation, as a participant in the federal Medicaid program, to provide a highly effective, medically recognized and physician recommended form of intensive treatment known as Applied Behavioral Analysis (ABA) for children suffering from autism. The State, through its named Defendants Helen Jones-Kelley, Director of Ohio Department of Jobs and Family Services and Sandra Stephenson, Director of Ohio Department of Mental Health (collectively, the State) argues that such services are not required to be covered under Medicaid because the services are "habilitative" rather than "rehabilitative." After careful study of the relevant statutes and regulations, this Court concluded that this dichotomy has no relevance to medical or remedial services for children when the treatment has been recommended by a physician or other licensed practitioner for the "maximum reduction of a physical or mental disability."

Having found that new Ohio Administrative Rules, which were to become

1

effective July 1, 2008, were designed to deny ABA services to Ohio children by characterizing them as habilitative, the Court temporarily enjoined the enforcement of those rules on the grounds that they would effectively deny such children services that they were entitled to receive under the federal Medicaid Act.  See, June 30, 2008 Order (hereinafter Order).  On July 10, 2008, the State filed a Notice of Appeal from the Order granting the preliminary injunction (doc. 44).  The State also filed a motion to stay enforcement of the Order pending the outcome of the appeal (doc. 43).

## II.     Legal Analysis

A motion to stay an order pending appeal is governed by Fed. R. Civ. P. 62(c). ACLU of Ohio Found., Inc. v. Ashbrook, No. 1:0cv0556, 2002 U.S. Dist. LEXIS 14096 (N.D. Ohio, June 14, 2002).  In deciding a motion for a stay of an injunction pending appeal, a court considers the following four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Hilton v. Braunskill, 481 U.S. 770, 776 (1987). These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together. Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir. 1991).  Notably, these factors are the same four factors that the Plaintiffs had the burden of establishing in seeking a temporary restraining order and preliminary injunction. See, Leary v. Daeschner, 228 F. 3d 729, 236 (6th Cir. 2000) (setting forth the four factors to be considered in deciding a motion for preliminary injunction).

**A.** **Whether the State has made a strong showing that they are likely to succeed on the merits.**

The State asserts that it is likely to succeed on the merits of the underlying suit because "habilitative" services are not covered by Medicaid.  In support of this contention, the State cites to various letters from CMS, a CMS State Medicaid Manual, and a Pennsylvania Departmental Appeals Board decision, all of which indicate that habilitative services are generally not covered by Medicaid.  Based on the fact that "habilitative services" are generally not covered by Medicaid, the State concludes that the community psychiatric supportive treatment (CPST) services provided to Plaintiff children at Step by Step Academy (SBSA) are also not covered by Medicaid. The State's argument, however, presupposes that these CPST services, received by the Plaintiff children at SBSA are "habilitative services."   As set forth in this Court's June 30, 2008 Order, the Plaintiffs have provided sufficient evidence to establish that the CSPT services are not "habilitative" and may be medically necessary to correct or ameliorate a condition suffered by Plaintiff children.

The preliminary injunction ordered by this Court enjoins the enforcement of two proposed Ohio Administrative Rules that this Court has determined were enacted to limit the services that can be provided under Medicaid.  Under the current rules, which remain in effect pursuant to this Court's Order,  community mental health services are covered so long as they are rendered by "eligible medicaid providers." Ohio Admin. Code 5101:3-27-02(A).  SBSA is currently an eligible medicaid provider of community mental health services, which include CPST services. See, Ohio Admin. Code 5101:3-27-02(A)(6).  The State's proposed rule, enjoined by this Court, states that only

3

"rehabilitative" mental health services will be reimbursed by Medicaid. See, Ohio Admin. Code 5101:3-27-02(A), eff. 7/1/08.  Furthermore, the proposed regulation defines "rehabilitative services" as providing for the "maximum reduction of mental illness and are intended to restore an individual to the best possible functional level." Id.  In the order granting preliminary injunctive relief, this Court concluded that the proposed rule creates a "much more narrow definition of 'rehabilitative' than that found in the Federal Medicaid Act, which defines 'rehabilitative' as 'any medical or remedial services recommended by a physician or other licensed practitioner of the healing arts, within the scope of his practice under State law, for maximum reduction of physical or mental disability and restoration of a recipient to his best possible functional level.'" See, Pleas, 2008 U.S. Dist. LEXIS 49706 at *9 (citing, 42 C.F.R. § 440.130(d)). Notably, the federal Medicaid law does not limit rehabilitative services to only "mental illness."

The preliminary injunction also bars enforcement of the propose rule governing CPST services. Ohio Admin. Code 5122-129-17, eff. 7/1/08.  Under the rule currently in effect pursuant to the Court's Order, CPST services should be "focused on the individual's ability to succeed in the community; to identify and access needed services; and to show improvement in school, work and family and integration and contributions within the community." Id.   The current rule provides that CPST services are an "array of services" designed to address "the mental health needs of the client." Ohio Admin. Code 5122-129-17(A). Services under the current CPST rule include "further development of daily living skills" (Ohio Admin. Code 5122-129-17(B)(3)) and "mental health interventions that address symptoms, behaviors, thought processes, etc., that assist an individual in eliminating barriers to seeking or maintaining education and

employment." (Ohio Admin. Code 5122-129-17 (B)(9)).

In contrast, the enjoined proposed rule narrowly defines CPST services as a "rehabilitative service intended to maximize the reduction of symptoms of mental illness in order to restore the individual's functioning to the highest level possible." Ohio Admin. Code 5122-129-17, eff. 7/1/08. Rehabilitative services are only offered to individuals with "mental illness," thereby effectively excluding other physical and mental disabilities from coverage.

Moreover, the new version's restrictive language may have the effect of denying many children, not just Plaintiff children, access to CPST services. The proposed rule specifically requires that the individual client "take responsibility for managing his/her mental illness." Ohio Admin. Code 5122-29-17(A). The new provision mandates that the CPST recipient be "an active participant in his/her treatment and care" (Ohio Admin. Code 5122-29-17(B)(2)) and also requires that the CPST service recipient "have the cognitive ability to be able to participate in and benefit from the service." (Ohio Admin. Code 5122-29-17(B)(1)). Thus, under this proposed rule, even though CPST services may be medically necessary to "ameliorate or correct" a child's defect, if the child lacks the cognitive ability to participate in her care, she would be denied service under Ohio's proposed rule.

At the hearing on the preliminary injunction, the Plaintiffs established a strong likelihood of success on the merits of the underlying allegation that the proposed rules violate federal Medicaid law. As set forth in detail in the Court's Order, once a state agrees to participate in the federal Medicaid program, it is obligated to provide coverage for certain services, including early periodic screening and diagnostic treatment

(EPSDT). See, 42 U.S.C. §1396a(a)(43) and §1396d(a)(4)(B).  These services are

defined as including screening services, vision services, dental services, hearing

services, and

> (5)     such other necessary health care, diagnostic services,  treatment and
> other measures described in section 1905(a) [subsec. (a) of this section]
> to correct or ameliorate defects and physical and mental illnesses and
> conditions discovered by the screening services, whether or not such
> services are covered under the State plan.

42 U.S.C. §1396d(r)(5).  42. U.S.C. §1396d(a)(1) through (28) provide the necessary

services that must be provided to eligible children.  The EPSDT mandate is a

"comprehensive child health program of prevention and treatment." Katie A. v. Los

Angeles County, 481 F.3d1150, 1154 (9th Cir. 2007); see also, Rosie D. v. Romney, 410

F. Supp. 2d 18, 25 (D. Mass 2006) ("as broad as the overall Medicaid umbrella is

generally, the initiatives aimed at children are far more expansive").

One of the necessary services that must be provided to eligible children is found

at section 1396d(a)(13), and states that a state plan must provide for:

> other diagnostic, screening, preventative and rehabilitative services,
> including any medical or remedial services (provided in a facility, home or
> other setting) recommended by a physician or other licensed practitioner
> of the healing arts within the scope of their practice under State law, for
> the maximum reduction of physical or mental disability and restoration of
> an individual to the best possible functional level.

The Plaintiffs have persuasively argued, that this provision requires the State to provide

CPST services to the Plaintiff children if the CSPT services are recommended by a

physician or other licensed practitioner of the healing arts "for the maximum reduction of

physical or mental disability and restoration of an individual to the best possible

functional level."  The State, however, has concluded that the CPST services offered at

6

SBSA are not "rehabilitative" and therefore cannot fall within this subsection of the federal Medicaid Act.  In reaching this conclusion, the State circles back to its presupposition that the services provided to Plaintiff children are "habilitative" and therefore cannot be "rehabilitative." The State cites to 42 U.S.C. §1396n(c)(5)(A), the only section of the entire Medicaid Act which defines "habilitative services," and does so within the context of state waiver programs for preventing the institutionalization of the mentally retarded. Under this section, "habilitation services" are:

> services designed to assist individuals in acquiring, retaining, and improving the self-help, socialization, and adaptive skills necessary to reside successfully in home and community based settings.

Notably, "habilitative services" are not medical or remedial and, unlike rehabilitative services, are not "recommended by a physician or other licensed practitioner of the healing arts."  Moreover, habilitative services are not designed for the "maximum reduction of physical or mental disability and restoration of a recipient to his best possible functional level."  As this court noted in its order granting the preliminary injunction, what "truly differentiates 'habilitative' and 'rehabilitative' services is the 'medical necessity' of those services."  See, Pleas, 2008 U.S. Dist. LEXIS 49706 at *9 (citing Ohio, Dep't of Mental Retardation & Developmental Disabilities v. U.S. Dept. of Health and Human Services, 761 F.2d 1187 (6th Cir. 1985) ("Putting aside the argument over "habilitative" and "rehabilitative," Ohio must be given an opportunity to demonstrate that the services which it proposes to provide at habilitation centers fall within "medical assistance" as defined in Title XIX.")).

The State wants to define rehabilitative services so narrowly as to include only services that "restore" a person to a prior level of functioning. The State reaches this

conclusion by focusing intensively on the word "restoration." See, 42 U.S.C. §1396d(a)(13).  While, this could arguably make sense in the context of adults (who are not afforded as extensive coverage under Medicaid as children), it makes no sense in the context of children. If the term "restoration of an individual to the best possible functional level" requires that the individual once actually possess the functional level, very few young children could ever receive "rehabilitative services." Under this definition, for instance, a child born with a disability that prohibited him from learning to walk could not receive rehabilitative services that would help him to walk, because the service would not "restore" him to a best possible functional level. On the other hand, a child who is injured shortly after learning to walk, would be able to receive rehabilitative services that would help him to walk again (although, under the State's logic, if that child had not yet learned to walk, conceivably he would also be excluded from receiving rehabilitative service). Such a narrow definition of "rehabilitative" simply does not meet with the expansive and remedial nature of the EPSDT mandate and makes no sense as applied to children.

The Court's conclusion that the services required by the EPSDT mandate are more broad than Defendants would suggest, and that the proposed rules may violate that Federal mandate, is supported by case law. In a case that is very relevant to the instant matter, the Eastern District of Louisiana determined that "psychological and behavior management services" for autistic children fell within the services described in 42 U.S.C. §1396d(a)(13). Chisholm v. Hood, 133 F. Supp. 2d 894, 897-898 (E.D. L.A.,

2001)[1].  There was no discussion of the need for the services to meet a narrow

definition of "rehabilitative" but rather, the focus was solely on whether the medical

service corrected or ameliorated a condition. Id.  In Rosie D. v. Romney, 410 F. Supp.

2d 18 (D. Mass 2006) the court did not require that a service be "rehabilitative" under

section 1396d(a)(13), but rather held that "if a licensed clinician finds a particular service

to be medically necessary to help a child improve his or her functional level, this service

must be paid for by a state's Medicaid plan pursuant to the EPSDT mandate." Id (using

the phrase "improve" rather than "restore" in concluding that services were necessary).

In Pediatric Specialty Care Inc.v. Ark. Dept. of Human Services, 443 F. 3d 1005 (8th Cir.

2006), the Eighth Circuit read 42 U.S.C. §1396d(a)(13) as requiring the State to provide

early intervention behavioral treatment to children under the EPSDT mandate.  The

court concluded that such treatment was rehabilitative, even though it applied to young

children who presumably were not being "restored" to a prior ability.

The Court concludes that the State has not established a strong likelihood of

success on the underlying merits of the case.

**B.      Whether the State will be irreparably injured.**

The State asserts that it will be injured if the Court does not stay the injunction

because the State may be forced to pay for services rendered at SBSA that the federal

CMS will not reimburse. However, the Court has concluded that the Plaintiffs have

---

[1]      The Louisiana District Court also noted that the provision of behavioral
and psychological services to children with autism was also covered by 42 U.S.C.
§1396d(a)(6) which mandates EPSDT coverage for "any other type of remedial care
recognized under State law, furnished by licensed practitioners within the scope of their
practice as defined by State law." Chisholm,133 F. Supp. 2d at 898.

established a likelihood of success on the merits of the case which would result in the conclusion that the services at SBSA are medically necessary and covered by Medicaid. If in fact, the services are medically necessary, the federal government has to cover the services rendered by the State.

### C.    Whether the Plaintiffs will be irreparably injured.

In its Order, this Court found that without an injunction prohibiting the enforcement of the new administrative regulations, the Plaintiff children would be irreparably injured.  Plaintiffs presented sufficient evidence that the Plaintiff children will suffer regression if they are no longer able to receive the 35-40 hours of ABA therapy per week. See, Plaintiff's TRO Hearing Ex. 9 (When the behavior plan for J.L., the child who ruminates, was stopped for a mere two days, his rumination increased from 5 times per day to 34 times per day); see also, Decl. of A.C. at ¶ 17 (during breaks when X.C. does not receive treatment at SBSA, his behaviors worsen and his skills regress); see, Decl. of K.G. (during breaks when W.G. does not receive his services at SBSA, he suffers regression).  Plaintiffs also provided the opinion of a licensed medical provider who concluded, in her professional judgment and to a reasonable degree of certainty, that if services are stopped, the Plaintiff children will suffer irreparable injury.  See, Rosner Decl. at ¶ 7.

The State assert that Plaintiffs will not suffer because if the services provided at SBSA are medically necessary, they may still be covered under other sections of the Medicaid Act.  For instance, the State argues that the Plaintiffs could apply for a waiver or could seek "pre-authorization" for coverage of the services.  This argument ignores the substantial impact that waiting for a waiver of pre-authorization would have on these

children.  The State is well aware of the fact that the proposed rules will specifically

hinder what services can be rendered to these children and has in fact taken steps to try

to find other arrangements for them once the new rules would be effective, which are

not the equivalent of services they were receiving under the current rules.  See, State's

TRO Hearing Exs. W, Y, Z, and AA.

### D.    The public interest is not served by a stay of  the injunction.

 Congress mandated that the EPSDT services be provided to eligible children in

the State of Ohio.  In making the EPSDT provisions mandatory, Congress recognized

the need for making "services available so that young people can receive medical care

before health problems become chronic and irreversible damage occur."  See, Stanton

v. Bond, 504 F.2d 1246, 1249 (7th Cir. 1974) (citing Senate and House Committee

reports emphasizing the need for EPSDT services).  Early and effective treatment of

children with autism has been shown to provide significant improvement, including the

return of those children to the general community.  See, Mulick Decl. at ¶ 11. The public

benefits from the treatment of children with medical conditions. Although the cost of

providing care to autistic children appears daunting, the potential that such care will

have to be continued throughout adulthood poses a potentially larger economic burden.

See, Michelle LeMarche Decl. at ¶ A (studies show a savings of $1,000,000 per child

over the child's lifetime by receiving necessary early intervention).

 Even if the State's obligation to pay for EPSDT services is broad and expensive,

it cannot use this as an excuse to ignore the requirements of the law. The State is

obligated to comply with Federal Medicaid law and may not "characterize its duty to

comply with the requirements of an elective program such as Medicaid as constituting a

hardship to its citizens."   Illinois Hospital Asso. v. Illinois Dep't of Public Aid, 576 F.

Supp. 360, 371 (N.D. Ill. 1983).

## III.    CONCLUSION

For the reasons set forth herein, and as stated in this Court's June 30, 2008

Order, the State's motion for stay (doc. 43)  is DENIED.

IT IS SO ORDERED.

S/ James L. Graham
James L. Graham
UNITED STATES DISTRICT COURT

Date:  July 17, 2008s